The opinion of the Court was drawn up by
Appleton," C. J.
This suit is brought to recover damages for the non-performance of a contract which is in the following terms.
" This agreement between Rendol Whidden on the one part and Belmore & Young on the other part, witnesseth, that said Whidden agrees to saw three hundred thousand feet of spruce, pine and hemlock logs, as fast as they come into the boom and, can be sawed, as well as any such logs are sawed on the river, and in such dimensions as said Belmore & Young direct, at the rate of one dollar and twenty-five cents per M feet. Said logs to be sawed the present season, by the single saw. And said Belmore & Young agree to pay said Whidden one dollar and T2ff6¡y per M as above, payable at the time each hundred thousand is sawed, in a three months draft. It is understood also that all the slabs shall belong to the said Whidden. "Belmore & Young,
"Calais, Max-ch 29, ’53: "Rendol Whidden.
"Witness — Wm. Kinney.”
*359 There was evidence tending to show that the quantity of logs specified in the contract came into the boom. A portion of those were delivered to the plaintiff to be sawed, and the non-delivery of the residue constitutes an alleged breach of the contract.
The presiding Judge, (among other instructions not excepted to,) instructed the jury "that, under the contract in suit, the plaintiff could recover, in this action, as now brought, only for the quantity of logs actually sawed by him for the defendants; but that he might recover an additional price for the sawing, and was not restricted to the contract price if the defendants had not performed their contract, by furnishing the logs at such a place as was contemplated by the parties in accordance with the usual course of business; but that no damages could be recovered in this action for the failure of the defendants to deliver the whole quantity of 300 M feet of logs named in the contract.”
If it was at the option of the defendants to deliver such portion of the logs as they should choose, they would not violate their contract by omitting to deliver. The plaintiff would not therefore be entitled to extra compensation for that cause. The material and controlling question is, whether or not the defendants were bound to deliver the whole of 300 M feet of logs named in the contract.
By the agreement between the parties, Whidden agreed to saw three hundred thousand feet of spruce, pine and hemlock logs, "us fast as they came into the boom and can be sawed.” He must have his men and mill ready to perform this contract. He could not perform it without a corresponding delivery of the logs. The plaintiff was to have "all the slabs.” But to give him the slabs, the logs must be sawed in his mill. It was never the understanding that he was to go elsewhere to procure them. Now was this contract unilateral? Was Whidden under obligation to be at all times ready to saw, and the defendants to be under no obligation to furnish the logs to be sawed? Or was the *360 contract reciprocal — -the plaintiff to saw and the defendants to furnish the logs to be sawed ?
The necessary implication from the whole contract is, that the ■ defendants should deliver the logs to be sawed " as fast as they came into the boom,” as without such delivery the plaintiff could not perform his part of the agreement. In Pordage v. Cole, (1 Saund., 319,) the marginal abstract is as follows: — "If it be agreed between A and B that B shall pay A a sum of money for his lands, and on a particular day, these words amount to a covenant by A to convey the lands; for agreed is the word of both,” &c. In Barton v. McLane, 5 Hill, 256, F agreed to let B have privilege for a specified time of- cleansing ore at E’s forge, and of using a certain amount of surplus water for that purpose; B agreeing to erect machinery therefor, and to furnish F with so much cleansed ore as might be wanted in stocking his forge at a price stated. It was held that the latter clause of the agreement was mutually binding, and that F could not legally refuse to accept and pay for the ore contemplated by it. The word agreement necessarily imports two parties; and whón one party agrees to sell his farm to another for a stipulated price, and both parties sign the agreement, there is a promise by the purchaser to purchase the farm and pay for it, the consideration specified, as clearly implied as though it were expressed in words. Richards v. Edick, 17 Barb., 261. "The first objection to the first count in the complaint,” observes (Fridley, J., in delivering the opinion of the Court, "is founded on the allegation that the agreement contains no promise or engagement of the defendant to purchase or to pay for the plaintiff’s farm. It is true there is no express contract to that effect found in'the agreement ; but in my opinion there is a clear implication of one. * * Now this is an agreement inter partes and is signed by both. The word agreement necessarily imports two parties, one to sell and one to buy, and when Richards agrees to sell his farm to Edick for $1700, and 240 acres of land owned *361 by Edick in the State of Illinois, and Edick signs the agreement, there is a promise to purchase and pay for the farm, the consideration expressed, as clearly implied as though it were expressed in words.” So, in Sampson v. Easterby, 17 E. C. L., 428, when a lease of an undivided third part of certain mines contained a recital of an agreement made by the lessee with the lessor, and the owners of the other two-thirds, for pulling down an old smelting mill and building «another of larger dimensions, and the lease contained a covenant to keep the new mill in repair, and so leave it at the expiration of the term, but did not contain a covenant to build it: — Held, that.such covenant was to be implied.
The defendants " agree to pay said Whidden one dollar riv per M as above, payable at the time each hundred thousand is sawed.” This implies the lumber was to be delivered as above — that is, "as fast as they come into the boom and can be sawed.” It could never have been the meaning of the parties that Whidden was to be in readiness to saw, and the defendants were to be at liberty to deliver any logs, or none at all, as they should deem advisable. The quantity to be sawed, the price per thousand feet, and the time of payment, are all set forth in the agreement. The defendants had exacted certain obligations from the plaintiff which he could not perform without certain acts on their part. We think the defendants have agreed to deliver the plaintiff to saw, " three hundred thousand feet of pine, spruce and hemlock logs as fast as they come into the boom and can be sawed.” This is obviously implied by the terms of the contract and the parties must so have intended.

Exceptions sustained.

Cutting, Davis, Kent, Walton and Dickebson, JJ., concurred.